# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1857 | **DATE** | 4/16/2004 |
| **CASE TITLE** | Abbott Laboratories v. OraSure Technologies, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Abbott's Petition to Confirm Arbitration Award/
OraSure's Motion to Modify Arbitration Award and to Stay Execution

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, this court denies both Abbott's petition (Doc. #1) and OraSure's motion (Doc. #7) without prejudice and remands the award to the arbitrator for clarification on a single issue. The court respectfully requests that the arbitrator issue the designated clarification by June 30, 2004.

(11) [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 2 2 2004 date docketed | |
| | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| acd/lc | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, ) | |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 04 C 1857 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| ) | |
| ORASURE TECHNOLOGIES, INC., ) | |
| ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

APR 9 2004

Abbott Laboratories and OraSure Technologies, Inc. are parties to a commercial contract that contains an agreement to submit their disputes to binding arbitration. Following the development of a dispute between the parties, a neutral arbitrator conducted an arbitration pursuant to the agreement in February 2004. Subsequently, pursuant to section 9 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("the Act"), Abbott filed a Petition to Confirm Arbitration Award. Shortly thereafter, pursuant to sections 10 and 11 of the Act, OraSure filed a Motion to Modify Arbitration Award and to Stay Execution.

For the reasons set forth below, the court denies both Abbott's petition and OraSure's motion without prejudice and remands the Award to the Arbitrator for clarification on a single issue.

I.  **Background**

   A.  **The Agreement**

On June 14, 2002, the parties entered into a "Co-Exclusive Distributor Agreement" ("the



Agreement"). The Agreement provided that Abbott would become the co-exclusive distributor of OraSure's OraQuick HIV diagnostic test device ("device"). Under the Agreement, OraSure agreed to provide Ameritech with a supply of devices at $3.75 per device. Abbott consented to making a "Firm Purchase Commitment," under which it committed to purchasing a designated minimum number of devices within a certain time period. The Agreement specified that OraSure would supply product with a nine-month shelf life. Finally, the Agreement contained a termination provision requiring that an allegedly breaching party be given written notice and 30 days to cure its breach before the Agreement would automatically terminate.[1]

The Agreement also contained an arbitration clause, which provided that, "any dispute in connection with [the Agreement] shall be settled by final and binding alternative dispute resolution." (Pet., Exh. A). The arbitration clause set forth the procedure governing the parties' resolution of disputes, culminating with arbitration by a neutral arbitrator. The clause provided for what Abbott has deemed "baseball-style" arbitration, pursuant to which each party would be required to supply written notice identifying the issues to be resolved and proposed rulings on those issues. Following the arbitration, the arbitrator would be required to adopt in their entirety only one of the parties' proposed rulings on each of the disputed issues and would be disabled from issuing a written opinion or otherwise explaining basis for the ruling. Finally, the clause provided that arbitration awards would be "binding, non-reviewable, and non-appealable, and may be entered as a final judgment in any court having jurisdiction." (Pet., Exh. A).

---

[1] These are the basic facts regarding the Agreement, as deduced by the court from the parties' submissions. The parties did not provide the court with a copy of the Agreement. None of these facts is material to the court's ruling herein.

## B. The Parties' Initial Dispute[2]

In 2003, a dispute arose between the parties. The dispute related to Abbott's obligation and failure to meet its Firm Purchase Commitment under the Agreement (*i.e.*, to purchase the specified minimum amount of product). The parties entered into negotiations in an effort to amend the Agreement, but the negotiations were not successful. Abbott took the position that it was relieved of its obligation to meet its Firm Purchase Agreement because the FDA approved a seven-month shelf life for the device, as opposed to a nine-month shelf life, as specified in the Agreement. OraSure did not accept Abbott's position and, on August 7, 2003, sent a letter to Abbott in which it demanded that Abbott cure its purchase deficiency (and invoked the Agreement's termination provision). In October 2003, OraSure asserted that Abbott's failure to meet its Firm Purchase Commitment (and to cure its purchase deficiencies following its receipt of the August 7th letter) effected the termination of the Agreement.

Abbott opted to submit the matter to arbitration and initiated arbitration proceedings. The parties entered into a Reservation of Rights Agreement ("RRA"), pursuant to which they agreed that, pending the resolution of their dispute through arbitration, OraSure would supply Abbott with the devices outside of the Agreement and at the higher price of $6.00 per device.

On October 7 and 13, 2003, Abbott made purchase orders of the device at a rate of $3.75 per device. On October 29, 2003 – and presumably, after the intervening events described above – Abbott amended its October 7th and 13th purchase orders and placed an order under the RRA at a rate of $6.00 per device. The parties agree that, through its October 2003 purchase orders and

---

[2] Although the parties were less than clear in presenting to the court the chronology of events concerning their dispute, its general contours are apparent. In any event, the parties do not appear to dispute any of these facts, and none of the facts is material herein.

-3-

pursuant to the RRA, Abbott committed to purchase 410,000 devices at a rate of $6.00 per device. The parties agreed that those devices would be delivered to Abbott on a monthly schedule from December 2003 through May 2004. It is also apparent from the parties' submissions that the October 2003 purchase orders were not "orders" within the common understanding of the term, but rather were commitments to place orders in the future for the specified number of devices.

### C. The Arbitration and Award

On February 3 and 4, 2004, Arbitrator William H. Levit, Jr. ("the Arbitrator") conducted hearings, at which both parties presented evidence. Pursuant to the Agreement, both parties had prepared issues and proposed rulings for the Arbitrator.

In relevant part, Abbott contended that OraSure was in breach of the Agreement for failing to supply product to Abbott in compliance with the pricing terms of set forth in the Agreement (*i.e.*, for requiring OraSure to pay $6 per device pursuant to the RRA rather than the $3.75 per device specified in the Agreement). On that basis, Abbott argued that it should be awarded damages of $922,500. Abbott thus sought to collect from OraSure the $2.25 difference between the per device price of $3.75 provided for under the Agreement and the per device price of $6.00 provided for under the RRA, multiplied by the number of devices (410,000) that Abbott committed in October 2003 to purchase at the $6.00 per device price. At the arbitration, Abbott noted that it was seeking to be made whole for the losses it had incurred. Notably, Abbott also conceded that it had not yet paid all of the excess charges that formed the basis for its proposed award.

OraSure opposed Abbott's contentions in this regard by arguing that the Agreement

-4-

automatically terminated following Abbott's failure to meet its Firm Purchase Commitment (*i.e.*, to purchase the minimum amount of product designated in the Agreement) and that Abbott should not be awarded *any* damages. OraSure did not dispute Abbott's damages calculation by providing an alternative measure of damages (*i.e.*, to be applied in the event OraSure was required to compensate Abbott for its excess charges). Abbott, in turn, contended that it was excused from its failure to comply with any obligation to meet its FPC by OraSure's failure to deliver product with a nine-month shelf life and its failure to obtain FDA approvals that Abbott contended were necessary to satisfy its customers.

At the arbitration, the parties discussed the inconsistency between a potential ruling that the Agreement was not terminated (which would dictate that the device must be provided at $3.75 per unit) and a potential award of $922,500 (which would be premised upon Abbott's continuing to pay OraSure at the $6.00 per unit price for as yet unshipped, un-paid for balance of the 410,000 devices ordered in October 2003). The record reveals that the Arbitrator was aware that Abbott had not yet taken delivery of and paid for all of the 410,000 devices that it had committed to order via the October purchase orders. OraSure's attorney attempted to explain, albeit somewhat obtusely, that if the Agreement were to go forward, then Abbott would be charged $3.75 rather than $6.00 per device, and there would logically be no refund to Abbott for such devices. The Arbitrator responded by stating, "Well, that's really just logistics." *See* OraSure Mem., Exh. D at pp. 432-37.

Based upon the evidence presented at the hearings, the Arbitrator issued a written award dated February 18, 2004 ("the Award"). The Arbitrator determined that OraSure had breached the Agreement by failing to supply product to Abbott under the pricing terms specified therein.

On that basis, the Arbitrator awarded Abbott damages of $922,500, as proposed by Abbott. Further, the Arbitrator determined that Abbott's failure to meet its Firm Purchase Commitment was not excused by OraSure's failure to deliver product with a nine-month shelf life or to obtain certain FDA approvals, but nonetheless did not constitute a material default. He further found that Abbott's October 2003 purchase orders had cured any breach of the Agreement on its part and that OraSure had suffered no damages as a result of Abbott's alleged breach. Having found that Abbott's failure to meet its purchase obligations did not entitle OraSure to terminate the Agreement, the Arbitrator announced that the Agreement "remains in full force and effect." (Order, pp. 6, 7). Thus, the Arbitrator ordered the parties "to perform their obligations under the Agreement." (Order, p. 7).

### D. The Parties' Dispute Concerning Satisfaction of the Award

Following the Arbitrator's issuance of the Award, OraSure wrote a letter to Abbott dated February 23, 2004, concerning its proposed means of satisfying the Award. OraSure proposed to either reimburse or credit Abbott for all amounts already paid by Abbott in excess of $3.75 per device (*i.e.*, for devices already shipped and paid for pursuant to the $6.00 per device price assessed for the October purchase orders under the RRA) and by accepting $3.75 per device for all remaining devices. OraSure contends that, as of that time, Abbott had paid $64,125 in excess of the $3.75 per device rate for devices purchased under the RRA. That is, Abbott had received and paid for only 28,500 of the 410,000 devices ordered via the October purchase orders and pursuant to the RRA. OraSure noted in the letter that an additional 65,850 devices had been shipped to Abbott under the RRA but had not yet been paid for by Abbott. OraSure further noted that, pursuant to some November 2003 letters between the companies, OraSure would supply an

additional 143,150 devices. Finally, it noted its expectation that Abbott would purchase an additional 172,500 devices, which would represent the remaining deliveries under the October purchase orders through May 2004.

By letters dated February 24, 2004 and March 3, 2004, Abbott communicated to OraSure its unwillingness to accept OraSure's proposed method for satisfying the Award. Instead, Abbott demanded payment of $922,500.

On March 15, 2004, after the filing of Abbott's petition, OraSure sought to provide Abbott with a check for $11,037.50, which represented a refund of $2.25 for each of the 49,350 devices that Abbott had paid for as of that date. The letter also stated that, as of that time, Abbott had received invoices totaling $270,000 for the devices at the $6 per device rate, but had not paid any portion of that amount (notwithstanding that it was seeking the full $922,500 – in effect, as advance reimbursement). By a letter dated March 18, 2004, Abbott returned the check, stating that it was unwilling to accept payment of only a small portion of the Award. Abbott also represented that it was committed to paying $6.00 per device for all outstanding orders, as it believed it was required to do pursuant to the October 2003 purchase orders.

OraSure represented to the court (in its March 31, 2004 memorandum of law) that Abbott has since paid the $270,000 previously owed to OraSure. However, OraSure subsequently indicated (in its April 12, 2004 reply memorandum) that Abbott was once again delinquent in paying for devices delivered pursuant to the October 2003 purchase orders.

There is no dispute between the parties concerning Abbott's fidelity to its October 2003 commitment to purchase 410,000 devices. There is also no dispute concerning the fact that Abbott has not yet taken delivery of or paid for a substantial portion of those 410,000 devices.

## II. Analysis

As both parties recognize, judicial review of arbitration awards is extremely limited under the Act.[3] *See Ganton Technologies, Inc. v. U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004). In essence, "[w]hen the parties agree to have their disputes settled by an arbitrator, they also agree to accept the arbitrator's view of the facts and of the meaning of the contract." *Generica Limited v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1129 (7th Cir. 1997) (citation omitted). District courts, thus, are prohibited from considering the parties' disputes anew. *See Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995). Moreover, the Seventh Circuit has repeatedly held "that arbitrators' errors – even clear or gross errors – do not authorize courts to annul awards." *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994) (internal citation omitted).

Instead, the Act requires that a district court grant an application for confirmation of an arbitration award, "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. The Act sets forth the grounds for vacating, modifying, or correcting an arbitration award with great specificity. *See* 9 U.S.C. §§ 10 and 11. An award may be vacated where: it was procured by corruption, fraud, or undue means (*see* section 10(a)(1)); there was evident partiality or corruption in the arbitrators (*see* section 10(a)(2)); the arbitrators were guilty of certain specified types of misconduct (*see* section 10(a)(3)); or the arbitrators either exceeded their powers "or so imperfectly executed them that a mutual, final, and definite award

---

[3] As an initial matter, disposition based solely on the papers submitted by the parties is appropriate. *See Health Serv. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1257-58 (7th Cir. 1992) ("the language of Section 6 preempts the applicability of the Federal Rules and an Application to Vacate is to be treated procedurally in the manner of a motion").

upon the subject matter submitted was not made" (*see* section 10(a)(4)). An award may be modified or corrected where: "there was an evident material mistake in the description of any person, thing, or property" in the award (*see* section 11(a)); "the arbitrators have awarded upon a matter not submitted to them" (*see* section 11(b)); or "the award is imperfect in matter of form not affecting the merits of the controversy") (*see* section 11(c)).

District courts also have the authority to remand an award to the arbitrator because the award is ambiguous in some respect. *See Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992). Indeed, as a general proposition, district courts are prohibited from interpreting ambiguous arbitration awards and must remand them for clarification. *See Flender*, 953 F.2d at 279; *Teamsters Local, No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir. 1989). However, remanding for clarification is disfavored in light of the "the interest in prompt and final arbitration." *B & M Transit, Inc.*, 882 F.2d at 278 (citations omitted). Accordingly, courts are permitted to interpret awards if – but only if – the ambiguity can be resolved from the record. *See Flender*, 953 F.2d at 279-280. In essence, meaningful judicial review is impossible where an ambiguity exists in the award that cannot be resolved from the record.

Where the allegedly ambiguous issue relates to damages, remand is not appropriate where the arbitrator resolved all claims before him and left only a "ministerial computation" of damages to the court. *See Flender*, 953 F.2d at 280. However, where the court cannot discern from the award or the record how the arbitrator intended for his damages award to be implemented or satisfied (*i.e.*, what the damages award obligated the parties to do), remand is appropriate. *See, e.g., United Food & Commercial Workers Local 1001*, 950 F.2d 1340, 1345 (7th Cir. 1991) (arbitrator awarded "make whole" damages to employee, which the court assumed would be back

pay and benefits, but could not ascertain from the record what those would be or whether, in fact, that was what arbitrator intended).

Here, Abbott asks the court to confirm the Award, contending that no basis exists for its vacation, modification, or correction. Abbott claims that the Award was unambiguous and that the record reveals that the Arbitrator rejected the precise argument made by OraSure in the instant proceedings. Abbott proposes that: (1) it will continue to pay the $6 per device price in connection with the October purchase orders; (2) it will collect $922,500 representing compensation for having to agree to pay $6.00 for an item that should have cost $3.75; and (3) it will pay $3.75 for all subsequent orders, in light of the Arbitrator's order that the parties perform their obligations under the Agreement. (Abbott Repl. Br., p. 6).

Conversely, OraSure contends that the Award was "imperfect in form," in that it "inconsistently orders OraSure to perform its obligations under [the Agreement], and thereby accept $3.75 per OraQuick device, and also to pay Abbott, by way of reimbursement, sums in excess of $3.75 per device that Abbott has not yet paid and should not be paying." (Mot. p. 4). OraSure also contends that the Award "does not provide for the manner in which it must be satisfied" or the timing associated therewith and is lacking in a "rational basis." (Mot. p. 4).[4] OraSure finally contends that modification of the award in the manner it has requested is necessary to effect the intent of the Arbitrator. Citing only section 11(c) of the Act and a single case – *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437 (6th Cir. 1985) – OraSure

---

[4] Somewhat inconsistently, OraSure also contends that the record reveals the Arbitrator's recognition of the tension between enforcing the Agreement and granting Abbott's requested damages and considered the matter to be one of mere "logistics." OraSure points to this comment as evidence that the Arbitrator contemplated that the parties would work out details concerning the satisfaction of the Award.

asks this court to modify the Award "to provide for OraSure to satisfy it by reimbursing Abbott all sums in excess of $3.75 per OraQuick device paid by Abbott with respect to Abbott's October 2003 orders for 410,000 devices and by accepting $3.75 per device for the remainder of such 410,000 devices" and "to stay execution of the Award pending compliance in accordance with the modification of the Award." (Mot. p. 4).

OraSure's conclusory assertions and anemic argument in support of judicial modification of the award pursuant to section 11(c) are unavailing,[5] as is its request that the court modify the Award to effect the intent of the Arbitrator. Quite simply, the Arbitrator's "intent" concerning the satisfaction of Abbott's damages award is not apparent to the court from the Award and cannot be resolved from the record. This fact precludes the court from rendering a final ruling at this time on either Abbott's motion to confirm the award or OraSure's motion to modify the award.

Each party proposes a vastly different means for satisfaction of the damages award. This court cannot imagine that the Arbitrator intended to grant Abbott the windfall of a $922,500 or any advance reimbursement for overpayment on devices that it had not yet received or (over)paid for. Moreover, Abbott has not suggested a theory of contract damages that would support the odd result it seeks. Yet, neither parties' interpretation is conclusively negated by the language of the Award. The parties' difference of opinion stems in part from the fundamental tension between the Arbitrator's order that they abide by the Agreement (which required that OraSure charge Abbott $3.75 per device) and its order that Abbott be compensated for damages of

---

[5] As noted by Abbott, it involved the enforcement of a previously confirmed arbitration award through contempt proceedings. *Island Creek*, 764 F.2d at 440. Moreover, the Sixth Circuit specifically found "it is not clear that the district court either corrected or modified" the arbitration award at all. *Id.*

-11-

$922,500 (which was premised on OraSure's charging $6 per device, including for devices that were yet to be shipped and paid for by Abbott). This tension, combined with the Arbitrator's silence concerning how and when the damages award should be satisfied, creates an ambiguity in the Award that must be resolved by the Arbitrator. Specifically, it is unclear from the Award when and in what manner the $922,500 damages award is to be rendered, and it is unclear whether the Arbitrator intended to address this issue on its merits. Abbott contends that he did, by choosing its proposed damages ruling over OraSure's. OraSure contends that he did not and that the record reveals his belief that the parties would resolve the matter on their own.

Resort to the record does not resolve the matter. Instead, certain portions of the record – including the Arbitrator's comment concerning the "logistics" of making Abbott whole and his clear recognition of the fact that Abbott had not yet received and paid for all of the 410,000 devices (and, thus, had not yet paid excess charges in the amount of $922,500) – only intensify the ambiguity. Although the issue of how the damages award should be rendered was not explicitly presented by the parties in their recitation of the issues, it was part and parcel of the issues before the Arbitrator, and its clarification is necessary to facilitate meaningful judicial review of the Award in the context in which the court has been called upon to deliver the same.

Because of this ambiguity in the Award, the court will remand to the Arbitrator for clarification of the following issue – should OraSure satisfy the damages award by: (1) compensating Abbott for its prior excess payments and charging Abbott only $3.75 per device for the devices ordered in October 2003 that have yet to be shipped and paid for; (2) compensating Abbott for its excess payments as they are made, while continuing to charge Abbott $6 per device

for the devices ordered in October 2003 that have yet to be shipped and paid for; or (3) immediately paying Abbott $922,500, part of which would constitute advance reimbursement for the devices ordered in October 2003 that have yet to be shipped and paid for, while continuing to charge Abbott $6 per device for said devices.

## III. Conclusion

For the foregoing reasons, this court denies both Abbott's petition and OraSure's motion without prejudice and remands the Award to the Arbitrator for clarification on the single issue outlined above. The court respectfully requests that the Arbitrator issue the designated clarification by June 30, 2004.

**Enter:**

_David H. Coar_
**David H. Coar**
**United States District Judge**

**Dated: April 16, 2004**